UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID VAN BUREN,

               **Plaintiff,**

      v.

**OHIO DEPARTMENT OF
PUBLIC SAFETY,**

              **Defendant.**

Case No. 2:13-cv-1038
JUDGE EDMUND SARGUS, JR.
Magistrate Judge Elizabeth Deavers

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 31) and Plaintiff's Motion to Strike (ECF No. 32). For the reasons that follow, the Court **DENIES** both motions.

## I.

Since May 1990, Plaintiff David Van Buren has been employed by the Ohio State Highway Patrol, which is a division of Defendant Ohio's Department of Public Safety. On December 14, 2011, Plaintiff filed a civil action in this District against the Ohio State Highway Patrol, the Ohio Department of Public Safety Director Thomas P. Charles, and the Highway Patrol Director Colonel Charles Born. *See David Van Buren v. Ohio Department of Public Safety, et al.*, 2:13-cv-1118 ("*Van Buren I*").

In *Van Buren I*, Plaintiff alleged claims for relief for reverse race discrimination and retaliation. Plaintiff challenged the following employment decisions as discriminatory and retaliatory: (1) the April 2009 denial of his hardship transfer request; (2) the April 2009 selection of a Zanesville Post Commander; (3) his June 2009 demotion; (4) the February 2010 selection of

a Cambridge Post Commander; (5) the February 2011 selection of a Lieutenant in the Criminal Investigation Unit; and (6) the July 2011 selection of a Cambridge Post Commander.

On May 29, 2013, Defendants moved for summary judgment on all of Plaintiff's claims. This Court issued an Opinion and Order in which it granted Defendants' motion on all of Plaintiff's claims except the retaliation claims based upon his non-selection for the February 2011 Southeast Criminal Patrol Lieutenant position and the July 2011 Lieutenant position at the Cambridge Post. The case was scheduled for trial on March 24, 2014.

During the pendency of *Van Buren I*, Plaintiff applied, but was not selected, for Criminal Patrol Lieutenant at the Cambridge Post, which had become available in March 2013. Four individuals applied for the position. Defendant received each of the candidate's resume and cover letter and also had their performance evaluations from their commanders. Defendant chose Captain Richard S. Fambro, Captain Gene C. Jarvi, and Captain Cory D. Davies as members of a panel that would conduct in-person interviews for the position. Captain Fambro drafted interview questions to be utilized during the interviews, which were approved by the office of personnel. These questions were meant to test the candidate's knowledge, experience, and training, as well as a few "what-would-you-do-type questions." (Fambro Dep. at 15; ECF No. 27.) The interview panelists each recorded notes during the interviews of each candidate.

After the interviews were completed, the panel met briefly and discussed the interviews. Captain Fambro collected the interview notes taken by the other two Captains. Major Michael Black spoke briefly over the telephone with each interview panel member. These conversations are discussed in more detail below. The Captains informed Major Black, *inter alia*, that Sergeant Todd Criss performed best at the interviews. Captain Fambro also informed Major Black that he "was bringing that packet [of interview notes] back to the Alum Creek facility . . . . Because [he]

2

was leaving to go to San Francisco, [he] wanted to ensure [Major Black] had that packet, because the promotion board meeting was that same week on Friday." (Fambro Dep. at 21.) At the promotion board meeting, Major Black recommended Sergeant Criss for the Criminal Patrol Lieutenant position. The promotion board voted unanimously to adopt Major Black's recommendation. The recommendation went to Colonel John Born, who adopted it.

On October 17, 2013, Plaintiff filed the instant action, alleging retaliatory denial of the March 2013 promotion to Criminal Patrol Lieutenant at the Cambridge Post. That case was reassigned to this Court's docket as a case related to *Van Buren I*.

On February 11, 2014, the Court held a settlement conference in *Van Buren I*. At that conference the parties agreed to consolidate *Van Buren I* with the instant action. Thus, the Court consolidated the actions and vacated the trial scheduled in *Van Buren I*. Defendant has now moved for summary judgment on Plaintiff's retaliation claim related to the Highway Patrol's March 2013 selection of the Criminal Patrol Lieutenant at the Cambridge Post. Defendant has also asked this Court to reconsider its denial of the Highway Patrol's motion for summary judgment related to the February 2011 Southeast Criminal Patrol Lieutenant position and the July 2011 Lieutenant position at the Cambridge Post. (ECF No. 31.) That motion is ripe for review. (ECF Nos. 36, 39.)

Plaintiff has filed a Motion to Strike the portion of Defendant's Motion for Summary Judgment that requests reconsideration of the Court's prior decision. (ECF No. 32.) That motion too is fully briefed. (ECF Nos. 37, 38.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.

Plaintiff brings his retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and Chapter 4112 of the Ohio Revised Code. The Court considers Plaintiff's federal and state retaliation claims under a Title VII analysis because the

4

Ohio Civil Rights Act mirrors Title VII in all relevant respects with regard to these claims. *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 760 n.1 (6th Cir. 2008) (citing Ohio Rev. Code § 4112; *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008); *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008); *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 631 (6th Cir. 2008)). Where, as here, a plaintiff fails to present direct evidence of retaliation, the burden shifting framework first articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and refined by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity under Title VII, (2) the protected activity was known to the defendant, (3) the defendant took an adverse employment action against the plaintiff, and (4) there was a causal connection between the adverse employment action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (citing *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) and *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491–92 (6th Cir. 2010)). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (internal quotation marks omitted). If a plaintiff establishes a prima facie case, the defendant then has the burden of production and must articulate a legitimate, nondiscriminatory reason for its action. *Fuhr v. Hazel Park School Dist.*, 710 F.3d 668, 674 (6th Cir. 2013). "If a defendant successfully produces such a legitimate reason, then the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for [retaliation]." *Id.* at 675.

Furthermore, the United States Supreme Court recently clarified that a Title VII

retaliation claims must be proved according to traditional principles of but-for causation, not the

lessened causation test stated in § 2000e–2(m).  This requires proof that the unlawful retaliation

would not have occurred in the absence of the alleged wrongful action or actions of the

employer.  *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, — U.S. —, 133 S.Ct. 2517, 2533

(2013).

## A.  Prima Facie Case

Defendant contends that Plaintiff cannot establish a prima facie case of retaliation

because he cannot show that the decisionmakers knew of his engagement in the protected

activities at the time they took the adverse employment action.  Defendant contends:

> First, as defendant has discussed in this motion for summary judgment and the
> previous filing [in *Van Buren I*], promotion to command positions at [the Ohio
> State Highway Patrol] is a comprehensive, multi-tiered process involving many
> individuals.  Van Buren cannot simply allege "conspiracy" when he cannot even
> show knowledge of his protected activities by so many people involved in this
> comprehensive, multi-part process. *See, e.g. Kyle-Eiland v. Neff*, 408 Fed. Appx.
> 933, 941 (6th Cir. 2011) (knowledge of OCRC filings by human resources
> manager cannot be imputed to a supervisor without supporting evidence).
> Assuming for the sake of argument that this initial stage of review "is not
> onerous" and "easily met", *see, e.g. Nguyen v. City of Cleveland*, 229 F.3d 559,
> 563 (6th Cir. 2000), Van Buren cannot show knowledge of protected activity by
> two of the Captains who interviewed him, Fambro and Jarvi, or Major Black, who
> recommended Criss for the position to the promotion board.
>
> Neither can Van Buren show knowledge of his protected activity by
> almost all of the promotion board members who were present at the meeting in
> March 15, 2013.  Present were Lieutenant Colonel Kolcum, then-Lieutenant
> Colonel Pride, Major Bistor, Major Black, Major Teaford, Major Williams,
> Captain Charles, Captain Davis, Captain Gaskill, Captain Lay, Captain Vessels
> and Captain Zurcher. (Mourne Decl. ¶ 5, Ex. B).  Black nominated Criss for the
> Criminal Patrol position, and Zurcher seconded the nomination. (Mourne Decl. ¶
> 6, Ex. C).  Gaskill and Vessels were deposed, and did not recall any noteworthy
> comments about Van Buren's application.  To simply impute knowledge to every
> member of the promotion board without supporting evidence is precisely the
> inappropriate speculation that the Sixth Circuit rejected in *Kyle-Eiland*, *supra*.

(Def.'s Mot. for Summ. J. at 23.) Defendant's argument is not well taken. Plaintiff need not

show, by imputation or otherwise, "knowledge to every member of the promotion board" or to

all three captains who interviewed Plaintiff, nor does *Kyle-Eiland* stand for such a proposition.

In this case, it is undisputed that several individuals involved in the decisionmaking

process had knowledge of Plaintiff's protected activity. In contrast, in *Kyle-Eiland* there was no

dispute that the single decisionmaker had no knowledge of the plaintiff's protected activity.

Thus, the plaintiff argued that the knowledge of her protected activity that she claimed was

possessed by a non-decisionmaker should be imputed to the decisionmaker. The non-

decisionmaker, however, testified that she had no knowledge of the protected activity either.

The Sixth Circuit held that "[a]bsent any evidentiary showing to the contrary, it is impossible for

[the plaintiff] to support her contention that [the non-decisionmaker] told [the decisionmaker]

about her history with the OCRC." *Kyle-Eiland*, 408 F. App'x at 941. Further, the *Kyle-Eiland*

court noted that information about the plaintiff's protected activity was not even potentially

accessible to the decisionmaker nor to any other employee. *Id.* ("Furthermore, there is no

evidence that the OCRC contacted [the decisionmaker], or anyone at OSU, regarding the

complaints at or around the time at which they were filed. Nor is there anything to suggest that

the complaints would have been placed in [the plaintiff]'s personnel file or in any other location

where they would have been accessible to [the decisionmaker], [the other employee who

allegedly knew of the protected activity,] or other OSU employees.").

Thus, *Kyle-Eiland* is unhelpful to the consideration before this Court. Here, it is

undisputed that several of the decisionmakers had knowledge of Plaintiff's protected activity.

Captain Davies, one of the three captains who interviewed Plaintiff for the position, knew of his

protected activities. Further, several members of the Promotion Board, including Lieutenant

Colonel Daniel E. Kolcum, Major Kevin Teaford, and Captain George Williams knew of at least

one of Plaintiff's protected activities. Defendant has pointed the Court to no case, nor has this

Court found one, that supports the proposition that a plaintiff must show that *every* individual

involved in an adverse employment action must know of the employee's protected activity in

order to meet the prima facie burden.

Moreover, the fact that Plaintiff complained about discrimination and retaliation, filed

administrative charges against the Highway Patrol, and filed *Van Buren I* was certainly

accessible to many of those individuals involved in the decisionmaking process. The Sixth

Circuit has been clear that knowledge of an employee's protected activity can be shown by

circumstantial evidence.

> We noted that "[i]n most Title VII retaliation cases, the plaintiff will be able to
> produce direct evidence that the decision making officials knew of the plaintiff's
> protected activity," because "the adverse action will be taken by the same
> supervisor to whom the plaintiff has made complaints in the past." *Id*. at 552.
> But "direct evidence of such knowledge or awareness is not required, and . . . a
> plaintiff may survive summary judgment by producing circumstantial evidence to
> establish this element of her claim." *Id*.; *see, e.g., Allen v. Mich. Dep't of Corr.*,
> 165 F.3d 405, 413 (6th Cir. 1999) (finding a sufficient circumstantial case for
> knowledge of plaintiff's protected activity where plaintiff was the only one of
> several similarly-situated black officers to receive remedial action); *Polk v.
> Yellow Freight System, Inc.*, 876 F.2d 527, 531 (6th Cir.1989) (finding a sufficient
> circumstantial case for knowledge where defendant told plaintiff, "I know where
> you've been," after plaintiff returned from the state civil rights department).

*Proffitt v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 150 F. App'x 439, 442-43 (6th

Cir. 2005).

Although Defendant is correct that Plaintiff neither sets out the correct standard regarding

his prima facie burden nor clearly addresses Defendant's argument regarding that burden,

Plaintiff does submit evidence that those involved in the decisionmaking process had knowledge

of his protected activities.[1] The Court finds this evidence sufficient to meet Plaintiff's prima

facie burden to show that his protected activity was known to Defendant.

## B. Legitimate Nonretaliatory Reason and Pretext

Because Plaintiff has set forth a prima facie case of retaliation, Defendant must offer a

legitimate, nonretaliatory reason for not selecting him for promotion. *EEOC v. Avery Dennison*

*Corp.*, 104 F.3d 858, 862 (6th Cir. 1997). Defendant need only articulate a nonretaliatory

reason; it need not prove it. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citing *Mary's*

*Honor Center v. Hicks*, 509 U.S. 502 (1993)). Defendant posits that it selected "from a pool of

qualified candidates for promotion, and [awarded] the position to the candidate who prepared for

the interviews and outperformed the other candidates during the interviews for the position."

(Def.'s Mot. for Summ. J. at 2.) Choosing the candidate who performed the best during the

interview is a legitimate nonretaliatory reason.

Thus, the burden shifts back to Plaintiff, who must demonstrate that Defendant's

explanation for not selecting him for promotion is a pretext for retaliation. *Braithwaite v.*

*Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (citations omitted); *see also Wilson v. Cleveland*

*Clinic Found.*, No. 13-3258, 2014 WL 4397205 (6th Cir. Sept. 8, 2014) (applying honest belief

rule in retaliation case). "In order to do so, [P]laintiff must produce sufficient evidence from

which the jury could 'reasonably reject [Defendant's] explanation' and infer that [Defendant]

'intentionally [retaliated]' against him." *Braithwaite*, 258 F.3d at 493 (citing *Woythal v. Tex–*

*Tenn Corp.*, 112 F.3d 243, 246–47 (6th Cir. 1997); *St. Mary's Honor Center v. Hicks,* 509 U.S.

502, 519 (1993)). "Accordingly, [P]laintiff must allege more than a dispute over the facts upon

---

[1] Defendant takes issue with Plaintiff's arguments made on "the last few pages" of his memorandum in opposition because he does not offer citations to the record. In that portion of his brief, however, Plaintiff reiterates much of what he had previously set forth that did have citations to the record.

which his [non-selection] was based. He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non[retaliatory] reason for its adverse employment action." *Id*. at 493–94 (citing *Smith v. Chrysler*, 155 F.3d 799, 806–07 (6th Cir. 1998)).

> In order to determine whether the defendant had an "honest belief" in the proffered basis for the adverse employment action, this Court looks to whether the employer can establish its "reasonable reliance" on the particularized facts that were before it at the time the decision was made. *See Smith*, 155 F.3d at 807. In *Smith v. Chrysler*, this Court provided some guidance in determining whether reasonable reliance was present. We stated:

>> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

> *Id*. If there is no material dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual.

*Id*. at 494 .

In the instant action, Plaintiff sets forth the following evidence to support his burden to show that the Highway Patrol did not honestly believe in the proffered nonretaliatory reason given for his non-selection for the 2013 Criminal Patrol Lieutenant position at the Cambridge Post. First, Plaintiff argues that an inference of retaliation can be made by the inconsistent way in which the Highway Patrol chose the successful applicants for the Criminal Patrol Lieutenant positions, conducting personal interviews only for the Cambridge Post. In its Motion, Defendant explains why it conducted in-person interviews for the Criminal Patrol Lieutenant position at the Cambridge Post, stating:

10

> The Criminal Patrol Lieutenant position in the Cambridge District is a specialty position. (Van Buren II 7). In addition to Criminal Patrol, there were several other specialized sections within the Patrol. *Id.* Typically, interviews were conducted for specialty positions prior to a promotion board meeting. (Davies 10).

(Def.'s Mot. for Summ. J. at 14. Defendant continued, putting forth testimony "explain[ing] the importance of the interviews for the position:"

> In this position specifically, being able to get in front of a group and articulate your thoughts and plans and ideas and things is important because it is one of the things a commander at any level has to do, is be able to go out and sell programs of the organization to local entities or other groups. And you have to be able to articulate a clear knowledge, your presentation, whether appearance, demeanor, whether it be your level of confidence, and explain those answers are all - - you know, they're all important factors that I think any employer takes into effect when you're - - whether or not you're hiring a new applicant or whether or not you are choosing to move somebody up into a position of more responsibility.

*Id.* at 15 (citing Jarvi Dep. at 18-19; ECF No. 28).

Plaintiff, however, avers that the Highway Patrol did not include personal interviews as part of the selection process for any other Criminal Patrol Lieutenant positions. (Pl. Aff. ¶ 29; ECF No. 36-1 at 10.) Plaintiff infers that Defendant chose to conduct in-person interviews only for the Cambridge Post position because it gave it an excuse not to promote Plaintiff while he had a lawsuit pending.

In its Reply, Defendant does not dispute that the Cambridge Post position was the only position for which it conducted personal interviews to fill a Criminal Patrol Lieutenant position. The Highway Patrol does not explain why it chose to treat the selection process for the Cambridge Post position differently, and instead, it reiterates that it typically holds interviews to fill specialty positions, stating:

> Van Buren similarly argues that having to interview for this command position was somehow pretextual. It is undisputed, however that the Criminal Patrol Lieutenant position is a specialty position. (Van Buren II 7). In addition to Criminal Patrol, there were several other specialized sections within the Patrol.

> *Id.* Typically, interviews were conducted for specialty positions prior to a promotion board meeting. (Davies 10). Captain Jarvi, as one example, spoke about the importance of interviews for this position, including "being able to get in front of a group and articulate your thoughts and plans" and "to go out and sell programs of the organization to local entities or other groups." (Jarvi 18-19).

(Def.'s Reply at 9.)

The Highway Patrol's explanation neither addresses why it chose to treat the selection process for the Cambridge Post position differently, nor explains why, if interviews were of such importance, it chose not to utilize them when selecting the Criminal Patrol position at the other Highway Patrol Posts. Further, not only is the Cambridge Post Lieutenant position the only one that was filled utilizing personal interviews, the performance at those interviews is the Highway Patrol's stated reason for not selecting Plaintiff for the position.

Additionally, Plaintiff avers that the Criminal Patrol Lieutenant positions had been consistently filled by the Criminal Patrol Sergeant because of that person's seniority and training in the position. (Pl. Aff. ¶ 42.) Plaintiff was the Criminal Patrol Sergeant at the Cambridge Post. Indeed, even Sergeant Criss expected Plaintiff to receive the promotion because of his seniority and expressed that opinion to others, including Plaintiff:

> Q.• You told people you thought David Van Buren was going to get the position; did you not?
>
> A.• I felt as though the way -- in the past, it would go by seniority.
>
> Q.• Seniority?
>
> A.• Uh-huh.
>
> Q.• Did David Van Buren have seniority over others?
>
> A.• Yes.
>
> . . . .
> A.• What I have seen in the past.

Q.• So that would have been David Van Buren?

A.• Yes. He would have been the most senior.

Q.• All right. Did you say that to anybody?

A.• I believe I said -- specifically to anybody?

Q.• Yeah, that you thought David Van Buren was going to get the position.

A.• I'm sure I made that comment. I even might have made that comment to Dave.

(Criss Dep. at 18–19; ECF No. 25) (objections omitted).

Next, Plaintiff argues that he can show pretext because the testimony regarding the interview panel and Major Black's recommendation is conflicting in material respects. In its Motion for Summary Judgment, Defendant explains that Major "Black, who was a member of the promotion board, was present and spoke at the meeting. (Black 42). Black explained to the other members that there had been interviews for the position, and based upon the feedback he received regarding the interviews, Black recommended Criss for the promotion. (Black 42-43; Mourne Decl. ¶ 6, Ex. C)." (Def.'s Mot. for Summ. J. at 18.)

Defendant is correct that the three panelists agreed that Sergeant Criss performed best at the interview; however, the testimony regarding how that performance translated into Major Black recommending Criss to the promotion board is conflicting. That is, Major Black testified that he spoke separately with each panelist and that "[e]ach of them said that the consensus of the panel was Criss." (Black Dep. at 35; ECF No. 22.) Black further testified that the panel "came to a consensus between the three of them" and they selected Criss as the recommended candidate. *Id.* Black explained his presentation to the promotion board, testifying:

Q.· What did you say?

A.· Basically told them that we held the interviews and that Todd Criss was our selection and that's who we presented to -- that's who I presented and recommended for the position.

. . . .

Q.· Did you say why Criss was the best selection?

A.· I talked about -- all I could relay is what I was told from the interviews, because I was not a part of the interviews, but I relayed the pertinent information that would help me sell why we're recommending Criss for the position.

*Id.* at 42, 43.

This testimony is controverted by two of the three panel members.  Captain Fambro testified that the three panelist met after the interviews and that while they agreed that Sergeant Criss performed best at the interview, Captain Davies suggested to them that "we had to give the position to Van Buren because he was doing the job."  (Fambro Dep. at 11.)

Captain Davies refutes that the interview panel came to a consensus regarding who should be selected.  In testifying about the brief meeting the panel held after the interviews, Davies specifically addresses the issue and avers that he was not given the opportunity to make any recommendation to Major Black:

Q.· Okay.· [After the interviews] Did you talk to Captain Fambro or Captain Jarvi regarding who your recommendation was for this, for the criminal patrol?

A.· No.· We weren't given the opportunity to give a recommendation.

Q.· Did you come to a consensus regarding who should get it?

A.· No.· It wasn't our job.

Q.· Did you tell anybody who you would recommend?

A.· No.

14

(Black Dep. at 83; ECF No. 22.) And, although Captain Davies testified that the panel was not permitted to make a recommendation, because he knew that Major Black would be presenting to the promotion board that week he informed Black of the following:

> A.· [Reading from his notes that were an exhibit in the deposition] I said, e-mail Major Black if he had any questions, to call. He called. We discussed promotion. I advised Todd [Criss] and Dave [Van Buren] could do the job, however, Dave was more qualified than Todd. I said that it was more -- I said it more than once, my thoughts. Being aware they would make the decision.

*Id*. at 74. He further testified about his conversation with Major Black regarding Criss' performance at the interview and why he still believed Plaintiff was a more qualified candidate:

> A.· [Major Black] wanted to know about the interview and how the interview went. I told him how the interview went. I told him that Todd [Criss] was much more prepared for the interview than Dave [Van Buren] was. Todd brought some enthusiasm to the interview that Dave did not. However, I told Dave – I told him that Dave has done the job of the two supervisors, that Dave has done the OIS sergeant spot, he has done the criminal patrol sergeant. So on paper, he would be more qualified than Todd, because Todd's not done either one of those.

*Id*. at 74–75. This testimony conflicts with Major Black's in materially relevant ways. It is not the province of this Court to resolve these factual conflicts on summary judgment.

Finally, as this Court indicated in its Opinion and Order on Defendants' Motion for Summary Judgment in *Van Buren I*, qualification evidence and/or numerous denials of promotion may be probative of pretext. The Sixth Circuit directs:

> Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of [retaliation]. In the case in which a plaintiff does provide other probative evidence of [retaliation], that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment.

*Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006) (citation omitted). In the case *sub judice*, while the parties disagree as to how qualified Plaintiff is for the Criminal Patrol Lieutenant position related to the other candidates, there is no dispute that Plaintiff was qualified.

15

Similarly, an inference of retaliatory motive could be drawn from Defendant's repeated non-selection of Plaintiff for positions for which he was at least minimally qualified. *See e.g., Lane v. Vasquez*, 1:05-CV-01414, 2013 WL 3488540 (D. D.C. July 12, 2013) (along with comments, the repeated non-selection for positions for which he was at least minimally qualified was sufficient "for a reasonable jury to discredit Defendant's proffered explanation as pretext"). Here, Plaintiff was not selected for four promotions for which he applied after he engaged in a protected activity. The evidence presented in this case and in *Van Buren I* shows that Plaintiff was at least minimally qualified for those positions. Consequently, an inference of retaliatory motive could be drawn from Defendant's repeated non-selection for the promotions.

Based on the evidence just discussed, the Court finds that Plaintiff has done more than allege a dispute over the facts upon which the promotion decision was made, and instead has put forth evidence that, when taken in the light most favorable to him, could show that Defendant did not honestly believe in the proffered nonretaliatory reason for not selecting Plaintiff for promotion to the 2013 Criminal Patrol Lieutenant position at the Cambridge Post. In other words, there is a sufficient evidentiary basis for a reasonable juror to question whether Defendant's proffered reasons for not selecting Plaintiff are pretextual and instead conclude that the real reason was retaliation. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim.

## IV.

Defendant asks this Court to reconsider its decision in *Van Buren I*, in which it denied summary judgment on two of Plaintiff's claims of retaliation. Plaintiff asks the Court to strike Defendant's request.

In its Opinion and Order in *Van Buren I*, this Court found that Plaintiff had set forth a prima facie case of retaliation related to his non-selection to the February 2011 Southeast Criminal Patrol Lieutenant position and the July 2011 Lieutenant position at the Cambridge Post. The Court further concluded that Plaintiff proffered evidence sufficient to cast doubt on Defendants' explanations for not selecting him, raising genuine issues of material fact as to whether Defendants' stated reason was a pretext to conceal illegal retaliation.

The Court based its decision related to pretext on the following. First, there were statements made by Captain Williams and Colonel Born that could be construed to reflect retaliatory motive. Second, the Highway Patrol treated Plaintiff differently than his coworker when it came to its policy of promoting an officer after demotion. Specifically, Plaintiff was told that he was not eligible for promotion for two years after a demotion, which was not in accord with the Highway Patrol Policy of one year, and also was not what the Patrol had done with Plaintiff's coworker who was promoted six months after demotion to the first Lieutenant position open in his work area. Third, the Court relied upon qualification evidence, which showed that Plaintiff generally possessed similar qualifications as did the successful applicants. Fourth, the Court indicated that an inference of retaliatory motive could be drawn from Defendants' repeated non-selection of Plaintiff for positions for which he was at least minimally qualified. And, finally, the Court noted that there was testimony that Plaintiff was the most qualified candidate for the 2013 Criminal Patrol Lieutenant position, which is the subject of the instant case.

In its current motion, Defendant contends:

> Because his claim of retaliation in March 2013 is without merit, the Court should reconsider its evaluation of the record for the promotion decisions in 2011 that Van Buren alleges were retaliatory. Without the consideration of Van Buren's allegations of a retaliatory decision in March 2013, the Court likely would have granted summary judgment on the 2011 decisions.

(Def.'s Mot. for Summ. J. at 19.)  This Court, however, disagrees.

First, there were numerous reasons, taken together, that the Court found had raised an issue for the jury regarding the two 2011 promotions.  Thus, the Court cannot say that "[w]ithout the consideration of Van Buren's allegations of a retaliatory decision in March 2013, the Court likely would have granted summary judgment on the 2011 decisions." *Id.*  However, the Court need not make that determination because it has herein found that Plaintiff's 2013 non-selection for promotion is not, at this juncture, without merit.  Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment as it relates to its request for reconsideration and **DENIES AS MOOT** Plaintiff's Motion to Strike.

V.

For the reasons stated above, the Court **DENIES** in its entirety Defendant's Motion for Summary Judgment (ECF No. 31) and **DENIES AS MOOT** Plaintiff's Motion to Strike (ECF No. 32).

**IT IS SO ORDERED.**

9-23-2014
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**